IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
GERALD A. ZIELINSKI,            )
                                )  Civil Action
             Plaintiff          )  No. 11-cv-05053
                                )
          v.                    )
                                )
WHITEHALL MANOR, INC.,          )
                                )
             Defendant          )
```

                    *   *   *

APPEARANCES:
          MARC E. WEINSTEIN, ESQUIRE
             On behalf of Plaintiff

          JOHN K. BAKER, ESQUIRE
          GEORGE C. MORRISON, ESQUIRE
             On behalf of Defendant

                    *   *   *

O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

This matter is before the court on the Partial Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint Against Defendant Whitehall Manor, Inc., which motion was filed on December 13, 2011 ("Motion to Dismiss").  Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss was filed January 5, 2012 ("Plaintiff's Brief").

SUMMARY OF DECISION

For the reasons expressed below, I deny defendant's Partial Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint Against Defendant Whitehall Manor, Inc.

Specifically, I deny defendant's motion because plaintiff's January 12, 2010 letter to the Equal Employment Opportunity Commission constitutes a Charge of Retaliation in violation of the Age Discrimination in Employment Act[1] ("ADEA") and the Pennsylvania Human Relations Act[2] ("PHRA").  Further, I find that plaintiff's Charge of Retaliation was filed with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission prior to the deadline required by the ADEA and the PHRA.

Finally, I find that plaintiff has pled sufficient facts to support a reasonable inference that defendant retaliated against plaintiff for complaining of age discrimination in violation of the ADEA and the PHRA.  Specifically, plaintiff has pled sufficient facts to support a reasonable inference that plaintiff engaged in activity protected by the ADEA and the PHRA, that defendant took an adverse employment action against plaintiff after such protected activity, and that a causal relationship exists between plaintiff's protected activity and the adverse employment action.

<u>JURISDICTION</u>

This court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's Amended Complaint alleges

---

[1]     29 U.S.C. §§ 621-634.

[2]     Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. 951-963.

that defendant violated the federal Family and Medical Leave Act[3] ("FMLA") and the federal ADEA.  The claims alleged thus pose a federal question.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claims allegedly occurred in Whitehall, Lehigh County, Pennsylvania, which is located in this judicial district.

PLAINTIFF'S CLAIMS

In his four-count amended complaint, plaintiff Gerald A. Zielinski alleges that defendant Whitehall Manor, Inc. violated the FMLA (Counts One and Two), the ADEA (Count Three), and the PHRA (Count Four).[4]

Specifically, in Count One plaintiff alleges that defendant violated 29 U.S.C. § 2615(a)(1) of the FMLA,[5] which prohibits interfering with or denying rights afforded under the FMLA.

In Count Two plaintiff alleges that defendant violated 29 U.S.C. § 2615(a)(2) of the FMLA,[6] which prohibits discrim-

---

[3]     29 U.S.C. §§ 2601-2654.

[4]     Plaintiff's Amended Complaint at ¶¶ 28, 31, 34 and 37.

[5]     Plaintiff's Amended Complaint at ¶ 27.

[6]     Plaintiff's Amended Complaint at ¶ 31.

-3-

inating against an individual attempting to exercise his rights under the FMLA.

In Count Three plaintiff alleges that defendant violated 29 U.S.C. § 623(d) of the ADEA,[7] which prohibits an employer from retaliating against an employee for opposing conduct made unlawful by the ADEA.

Finally, in Count Four, plaintiff alleges that defendant violated 43 P.S. § 955(d) of the PHRA,[8] which prohibits an employer from retaliating against an employee for opposing conduct made unlawful by the PHRA.

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial

---

[7]     Plaintiff's Amended Complaint at ¶ 34.

[8]     Plaintiff's Amended Complaint at ¶ 37.

proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief".  Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[9]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely

---

[9]    The United States Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

that the plaintiff can prove those facts or will ultimately
prevail on the merits.  <u>Phillips</u>, 515 F.3d at 231.  Nonetheless,
to survive a Rule 12(b)(6) motion, the complaint must provide
"enough facts to raise a reasonable expectation that discovery
will reveal evidence of the necessary element."  <u>Id.</u> at 234
(quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d
at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis
when considering a Rule 12(b)(6) motion.  First, the factual
matters averred in the complaint, and any attached exhibits,
should be separated from legal conclusions asserted.  <u>Fowler</u>,
578 F.3d at 210.  Any facts pled must be taken as true, and any
legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual
matters averred are sufficient to show that the plaintiff has a
"plausible claim for relief."  <u>Id.</u> at 211 (quoting <u>Iqbal</u>,
556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-
specific" and requires the court to draw on "its judicial
experience and common sense" to determine if the facts pled in
the complaint have "nudged [plaintiff's] claims" over the line
from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>,
556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d
at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

<u>FACTS</u>

Based upon the factual allegations in Plaintiff's Amended Complaint construed in the light most favorable to plaintiff, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

Plaintiff Gerald Zielinski is an adult individual who resides in Whitehall, Lehigh County, Pennsylvania. Defendant Whitehall Manor, Inc. is an assisted living personal care home which employed plaintiff as its Maintenance Director from February, 2002 until July, 2009.[10]

From 2002 through 2008, plaintiff's performance evaluations were excellent. After suffering a workplace injury in February 2009, plaintiff had surgery on his knee on March 27, 2009. On April 21, 2009 plaintiff returned to work.

Upon plaintiff's return to work, defendant's President Nimita Kapoor-Atiyeh ("Supervisor") demoted plaintiff to the position of Personal Care Assistant and required that he work the

---

[10]    Plaintiff's Amended Complaint at ¶¶ 13 and 14 and Exhibit 5.

-7-

overnight shift.  Four weeks later plaintiff's Supervisor reduced plaintiff's hourly pay.  Plaintiff's Supervisor harassed him incessantly for several months thereafter.[11]

In June 2009 plaintiff expressed concern to his Supervisor that he had not been reinstated to his position as Maintenance Director as he believed he was entitled under the FMLA.  On the evening of July 15, 2009, plaintiff's attorney sent a letter by facsimile transmission ("fax") to the home of plaintiff's Supervisor, warning the Supervisor of possible age discrimination.  Plaintiff's Supervisor fired plaintiff the next day, July 16, 2009.  Plaintiff was 65 years old at the time of his termination from employment.[12]

On January 12, 2010, exactly 180 days from plaintiff's termination date of July 16, 2009, plaintiff faxed a letter to the Philadelphia branch of the Equal Employment Opportunity Commission ("EEOC") requesting assistance in filing a Charge of Retaliation against defendant ("January 12, 2010 letter").  The EEOC received a paper copy of the letter by mail on January 14, 2010.  In the letter, plaintiff requested that the Charge of Retaliation be cross-filed with the Pennsylvania Human Relations Commission ("PHRC").[13]

---

[11]    Plaintiff's Amended Complaint at ¶¶ 1 and 14-17.

[12]    Plaintiff's Amended Complaint at ¶¶ 18, 19 and 21 and Exhibit 5.

[13]    Plaintiff's Amended Complaint, Exhibit 5.

On April 6, 2010, plaintiff filed a Charge of Discrimination with the EEOC against defendant alleging discrimination for a disability, and retaliation for a protected activity, in violation of the Americans with Disabilities Act[14] ("ADA").  Both the January 12, 2010 letter and the April 6, 2010 Charge of Discrimination were given the same charge number by the EEOC.  The EEOC notified defendant of plaintiff's April 6, 2010 Charge of Discrimination.[15]

In March 2011 the EEOC issued a Determination of plaintiff's Charge of Discrimination filed under the ADA, in which the EEOC found that there was reason to believe that violations of the ADA had occurred, and requested that the parties begin resolving the matter.  On May 9, 2011, the EEOC issued a Dismissal and Notice of Rights regarding plaintiff's charge.[16]

<u>DISCUSSION</u>

Plaintiff alleges in his amended complaint that defendant violated 29 U.S.C. § 623(d) of the ADEA by retaliating against him for complaining of age discrimination.  Plaintiff also

---

[14]     42 U.S.C. 12101-12213.

[15]     Plaintiff's Amended Complaint, Exhibit 5; Motion to Dismiss, Exhibit B.

[16]     Plaintiff's Amended Complaint at ¶ 11 and Exhibit 1.

-9-

alleges that defendant violated the anti-retaliation provision of the PHRA, 43 P.S. § 955(d), for the same reason.[17]

<u>Administrative Remedies</u>

To file suit under the ADEA in Pennsylvania, plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory conduct.  29 U.S.C. § 626(d)(1)(B); <u>Watson v. Eastman Kodak Company</u>, 235 F.3d 851, 854 (3d Cir. 2000).  For an ADEA claim, plaintiff's ability to file suit is not dependent on the EEOC taking any action on the charge.  <u>Federal Express Corporation v. Holowecki</u>, 552 U.S. 389, 403-404, 128 S.Ct. 1147, 1159, 170 L.Ed.2d 10, 23-24 (2008).

**A Charge under the ADEA**

The last day for plaintiff to file a timely Charge of Retaliation under the PHRA was January 12, 2010, 180 days after the alleged discriminatory conduct, his termination on July 16, 2009.  For plaintiff to have a timely filing under the PHRA, his January 12, 2010 letter to the EEOC must constitute a charge under the ADEA and must be considered to have been filed with the PHRA on January 12, 2010.  The first of these requirements will be considered in this section of this Opinion; the second, in the following section.

For a document to constitute a charge under the ADEA, it must be in writing, signed, and verified.  29 C.F.R. § 1601.9.

---

[17]    Plaintiff's Amended Complaint at ¶¶ 34 and 37.

Furthermore, the charge must generally allege the discriminatory act, 29 C.F.R. § 1626.6, and it must contain the following information:

> (1) The full name, address and telephone number of the person making the charge;
>
> (2) The full name and address of the person against whom the charge is made;
>
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
>
> (4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization.
>
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1626.8(a).

In addition to the EEOC's foregoing requirements, the United States Supreme Court has held that for a document to be a charge under the ADEA, it must "be reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Holowecki, 552 U.S. at 402, 128 S.Ct. at 1158, 170 L.Ed.2d at 22.

Plaintiff's January 12, 2010 letter to the EEOC specifically mentions retaliation for complaining of age

-11-

discrimination, which the ADEA prohibits.  The letter was written, signed, and verified, as required by the ADEA, because the line above plaintiff's signature reads, "I swear and affirm that the above information is true and correct under penalty of perjury."[18]  See 29 C.F.R. § 1601.3 (explaining that "verified" can mean "supported by an unsworn declaration in writing under penalty of perjury").

The letter contains the full name, address, and telephone number of both plaintiff and defendant.  Plaintiff also included a concise statement of the facts by describing his counsel's letter addressing age discrimination and his subsequent termination on July 16, 2009.

Plaintiff did not include in the January 12, 2010 letter how many people defendant employed.  However, the EEOC requires this information to be included in a charge only if it is known.  29 C.F.R. § 1626.8(a)(4).  Viewing the facts in the light most favorable to plaintiff, it is reasonable to infer from plaintiff's omission of the number of defendant's employees in the January 12, 2010 letter that he did not know how many people defendant employed at the time he sent the January 12, 2010 letter.

Even if plaintiff did know the number of defendant's employees at the time he sent the January 12, 2010 letter, the

---

[18]    Plaintiff's Amended Complaint, Exhibit 5.

-12-

EEOC also stated that "a charge may be amended to cure technical defects or *omissions*" and "such amendments and amendments alleging *additional* acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."  29 C.F.R. § 1601.12(b) (emphasis added).

In plaintiff's April 6, 2010 Charge of Discrimination against defendant, in which plaintiff claimed that defendant violated the ADA, plaintiff included the approximate number of defendant's employees.[19]  Because the facts plaintiff alleges in the April 6, 2010 Charge of Discrimination include additional unlawful acts arising out of the same termination, the number of defendant's employees could be considered an amendment that relates back to plaintiff's January 12, 2010 letter. Furthermore, it appears that the EEOC also considered plaintiff's two charges to be related, as they were given the same charge number.[20]

---

[19]   Motion to Dismiss, Exhibit B.

[20]   When deciding a motion to dismiss, a court generally does not consider any document other than the pleadings.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).  An exception to this general rule is when defendant attaches to the motion to dismiss an "undisputedly authentic document" that is "integral to or explicitly relied upon in the complaint".  Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  At that point, the court may consider such a document without turning a motion to dismiss into a motion for summary judgment.  Id.

(Footnote 20 continued):

-13-

Plaintiff satisfied the last requirement of 29 C.F.R. § 1626.8(a), which requires including "[a] statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws", by requesting in the January 12, 2010 letter that the Charge of Retaliation be cross-filed with the PHRC.

Plaintiff's letter also satisfies the requirement which the United States Supreme Court set forth in Holowecki, that the document be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  552 U.S. at 402, 128 S.Ct. at 1158, 170 L.Ed.2d at 22.

In the January 12, 2010 letter plaintiff wrote, "Please accept this correspondence as an initial request to

_____

(Continuation of footnote 20):

Here, the April 6, 2010 Charge of Discrimination is not disputed, as plaintiff relies on it in claiming that his January 12, 2010 letter meets the verification requirement.  Plaintiff's Brief at page 4.

Furthermore, in Plaintiff's Amended Complaint, he relies on the EEOC's actions in response to the submission of his January 12, 2010 letter in supporting his contention that he exhausted his administrative remedies. See Plaintiff's Amended Complaint at ¶ 11.

Because plaintiff's April 6, 2010 Charge of Discrimination arises out of the same conduct as his January 12, 2010 letter, and plaintiff relies on this conduct in stating a claim for violation of the ADEA and the PHRA, the court may consider the April 6, 2010 Charge of Discrimination without converting the motion to dismiss into a motion for summary judgment.

-14-

file a Charge of Retaliation against my former employer", and
"I ask for EEOC assistance in filing a Charge of Retaliation
against my former employer.  I will cooperate with the
investigation however I can."[21]  These statements, along with
the factual summary plaintiff provided in the letter, can be
reasonably construed as an attempt by plaintiff to garner
assistance from the EEOC in beginning an investigation into
alleged retaliation for complaining of age discrimination.

     Defendant contends that plaintiff abandoned any claim
under the ADEA when he filed the April 6, 2010 Charge of
Discrimination under only the ADA.[22]  Defendant cites a case
from this judicial district, Douris v. Bucks County,
2005 WL 226151, at *10 (E.D.Pa. Jan. 31, 2005)(Surrick, J.),
for the proposition that because the EEOC Determination to
which plaintiff refers addresses only the merits of an ADA
claim, and because plaintiff has not alleged that he received a
right-to-sue notice from the EEOC regarding the ADEA, plaintiff
has failed to exhaust his administrative remedies.

     As the United States Supreme Court held in Holowecki
in 2008, three years after Douris, a claimant who seeks to sue
under the ADEA is not required to receive a right-to-sue notice
from the EEOC before filing a claim under the ADEA. 552 U.S.

---

[21]    Plaintiff's Amended Complaint, Exhibit 5.

[22]    Motion to Dismiss, at page 6.

at 403-404, 128 S.Ct. at 1158-1159, 170 L.Ed.2d at 23-24.   In
Holowecki, the United States Supreme Court held that a claimant
wishing to sue under the ADEA need not wait for the EEOC to
take any action on his charge before filing suit.   Id.
Consequently, the fact that the EEOC made a determination based
only on plaintiff's ADA claim does not affect plaintiff's
ability to state a claim under the ADEA.

Because plaintiff's January 12, 2010 letter met the
requirements of a charge under the ADEA outlined by the EEOC
and by the United States Supreme Court in Holowecki, the EEOC
received a charge from plaintiff before the 300-day deadline,
and because plaintiff waited 60 days before filing suit,
29 U.S.C. § 626(d)(1), plaintiff has exhausted his
administrative remedies under the ADEA.

### Dual-Filing

The PHRA requires plaintiff to file a charge with the
PHRC within 180 days of the alleged discriminatory conduct.
43 P.S. § 959(h); Woodson v. Scott Paper Co., 109 F.3d 913, 925
(3d Cir. 1997).   Retaliation claims under the ADEA and the PHRA
are analyzed in the same manner.   Urey v. Grove City College,
94 Fed.Appx. 79, 81 (3d Cir. 2004).

Thus, because plaintiff's ADEA claim is not dependent
on the EEOC taking any action on his charge, Holowecki,
552 U.S. at 403-404, 128 S.Ct. at 1159, 170 L.Ed.2d at 23-24,

-16-

plaintiff's PHRA claim is likewise not dependent on the PHRC taking any action.

Whether a plaintiff has satisfied the PHRA by filing a complaint with the PHRC is a state law issue.  Woodson, 109 F.3d at 926-927.  The Supreme Court of Pennsylvania has held that if the EEOC transmits a charge to the PHRC, that is sufficient to constitute filing a charge under the PHRA. Vincent v. Fuller Co., 532 Pa. 547, 551, 616 A.2d 969, 971 (1992).  A complaint is deemed filed with the PHRC on the date it is received.  16 Pa.Code § 42.14(c).

Plaintiff had pled no facts indicating when the EEOC transmitted the charge to the PHRC, other than the May 7, 2010 letter from the PHRC indicating that it had received the EEOC charge.[23]

Each United States District Court in Pennsylvania has held that when a claimant files a charge with the EEOC and requests that the EEOC dual-file the charge with the PHRC, the charge is considered filed with the PHRC on the date the request for dual-filing is made.  See Mandel v. M & Q Packaging Corp., 2011 U.S.Dist. LEXIS 80431, at *16 (M.D.Pa. 2011); Yeager v. UPMC Horizon, 698 F.Supp.2d 523, 537-539 (W.D.Pa. 2010); Seybert v. The International Group, Inc., 2009 U.S.Dist. LEXIS 21543, at *49-50 (E.D.Pa. Mar. 18, 2009) (Pratter, J.).

---

[23]    Plaintiff's Amended Complaint, Exhibit 6.

I agree with the above district court findings.  The
EEOC and the PHRC have entered into a work-sharing agreement
wherein they designate each other as the agent to receive
charges for the other, to avoid duplicate time and effort spent
filing charges with each agency.  <u>Woodson</u>, 109 F.3d at 925-926.

This agreement was amended on January 25, 2008 to
read, "[t]he EEOC and the FEPA, consistent with the mutual
designation of each other as their agent for receipt of
charges, deem charges that are dual filed with the other Agency
as being filed with the non-originating agency as of the date
initially received by the originating agency."[24]  <u>Yeager</u>,
698 F.Supp.2d at 538 n.7.

As my colleague United States District Judge
Gene E.K. Pratter noted in <u>Seybert</u>, 2009 U.S.Dist. LEXIS
at *50, requiring claimants to file their charge with both
agencies, or to place the risk on claimants of the EEOC not
transmitting the charge to the PHRC before the 180-day
deadline, renders the cross-filing aspect of the work-sharing
agreement meaningless.

Accordingly, plaintiff's Charge of Retaliation of
January 12, 2010, which requests that the EEOC dual-file with
the PHRC, is considered received by the EEOC and the PHRC on

---

[24]    The PHRC is Pennsylvania's Fair Employment Practices Agency
(FEPA).  <u>Mazus v. Dept. of Transportation</u>, 629 F.2d 870, 877 (3d Cir. 1980).

Jan. 12, 2010, 180 days after plaintiff's termination on July 16, 2009.

In summary, plaintiff's January 12, 2010 letter to the EEOC constitutes a charge under the ADEA and the PHRA. Plaintiff met both the ADEA and the PHRA deadlines for filing the charge with the respective agencies.  And under <u>Holowecki</u>, a claimant need wait only 60 days after submitting the charge, and need not wait for an EEOC response to his charge, before filing suit.  Therefore, plaintiff's ADEA and PHRA claims are timely and plaintiff has exhausted his administrative remedies for Counts III and IV of his amended complaint.

<u>Retaliation under the ADEA and the PHRA</u>

As noted above, retaliation claims arising under the ADEA and the PHRA are analyzed in the same manner.  <u>Urey</u>, 94 Fed.Appx. at 81.  To establish a prima facie case of retaliation under the ADEA, plaintiff must show that (1) plaintiff engaged in an ADEA-protected activity; (2) defendant took an adverse employment action against plaintiff after plaintiff's protected activity; and (3) a causal relationship exists between plaintiff's protected activity and defendant's adverse employment action.  <u>Id.</u>

**Protected Activity**

Section 623(d) of the ADEA states in pertinent part: "[i]t shall be unlawful for an employer to discriminate against

-19-

any of his employees...because such individual, member or applicant for membership has opposed any practice made unlawful by this section". 29 U.S.C. § 623(d). Accordingly, plaintiff, who had his attorney send a letter to his Supervisor opposing age discrimination, is protected from retaliation under the ADEA.

In determining whether a specific complaint constitutes protected activity, courts consider the content of the complaint, rather than its form. <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694, 702 (3d Cir. 1995). Accordingly, a complaint need not be written or formal. <u>Id.</u> However, general claims of unfair treatment are not protected under this provision of the ADEA. <u>Id.</u>

Here, plaintiff alleges sufficient facts to establish that he engaged in ADEA-protected conduct. Plaintiff's attorney wrote in the July 15, 2009 letter sent to plaintiff's Supervisor, "if I learn of evidence supporting a claim for age discrimination we will lodge those charges too."[25] Consistent with <u>Barber</u>, plaintiff's attorney specifically mentioned age discrimination, so the letter is not a general claim of unfair treatment. The ADEA prohibits age discrimination, and stating that any evidence garnered in support of such discrimination

---

[25]   Plaintiff's Amended Complaint, Exhibit 3.

will be used in a suit against plaintiff's Supervisor does
constitute opposition to such behavior.

The United States Court of Appeals for the Third
Circuit has held that ADEA-protected activity includes
"protesting against discrimination by industry or by society in
general, and expressing support of co-workers who have filed
formal charges." Barber, 68 F.3d at 702 (quoting Sumner v.
United States Postal Service, 899 F.2d 203, 209 (2d Cir.
1990)). If protesting age discrimination by society in general
constitutes protected activity, certainly plaintiff's attorney
threatening to sue plaintiff's Supervisor upon learning of
evidence supporting age discrimination constitutes protected
activity.

The activity plaintiff complains of need not actually
be in violation of the ADEA.  However, in order for a complaint
to constitute protected activity under the ADEA, plaintiff must
have a good faith, reasonable belief that an ADEA-violation
occurred.  Aman v. Cort Furniture Rental Corporation,
85 F.3d 1074, 1079 (3d Cir. 1996).  Here, plaintiff has alleged
sufficient facts to infer that he had a good faith, reasonable
belief that an ADEA-violation had occurred.

Under the ADEA, an employer is not permitted to "fail
or refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his

-21-

compensation, terms, conditions, or privileges of employment, because of such individual's age". 29 U.S.C. § 623(a)(1). Plaintiff was 65 years old at the time he was terminated, and is thus protected by the ADEA. 29 U.S.C. § 631(a).

For six years prior to his workplace knee injury, plaintiff's performance evaluations were excellent. After returning to work from knee surgery on April 21, 2009, plaintiff's Supervisor demoted him and required that he work the overnight shift. Four weeks later, his Supervisor reduced his hourly pay. Plaintiff's Supervisor then harassed him incessantly for several months, up until his termination.[26]

Plaintiff could have formed two reasonable conclusions from his Supervisor's conduct. First, plaintiff would have been reasonable in believing that his Supervisor thought plaintiff's knee surgery was the first step in plaintiff becoming too old to perform his job duties. Second, plaintiff would have been reasonable in believing that his workplace injury made his Supervisor distinctly aware of plaintiff's age, and was treating him poorly because of his age.

Therefore, the allegations in Plaintiff's Amended Complaint are sufficient to establish that plaintiff had a good faith, reasonable belief that his Supervisor was violating the

---

[26]     Plaintiff's Amended Complaint at ¶¶ 1 and 14-17.

ADEA, and as a result, has pled sufficient facts that plaintiff engaged in protected activity under the ADEA.

### Adverse Action

In order to state a retaliation claim under the ADEA, a plaintiff must allege that he suffered an adverse action after engaging in a protected activity.  Termination from employment after engaging in ADEA-protected behavior is sufficient to satisfy the adverse employment action element for an ADEA retaliation claim.  See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183 (3d Cir. 2003).

Here, plaintiff alleges that following his Supervisor's receipt of the letter from plaintiff's counsel, which constitutes ADEA-protected activity, defendant fired plaintiff on July 16, 2009.[27]  Thus, the adverse employment element for plaintiff's ADEA retaliation claim is satisfied.

### Causal Relationship

To state a claim for retaliation, plaintiff must also show that a causal relationship exists between plaintiff's ADEA-protected behavior and defendant's adverse action against plaintiff.

To prove causation, plaintiff may show either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of

---

[27]     Plaintiff's Amended Complaint, Exhibit 5.

antagonism coupled with timing; or (3) that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. <u>Griesbaum v. Aventis Pharmaceuticals</u>, 259 Fed.Appx. 459, 466-467 (3d Cir. 2007) (citing <u>Lauren W. ex rel Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007) (quoting <u>Farrell v. Planters Lifesavers Company</u>, 206 F.3d 271, 281 (3d Cir. 2000))).

Drawing all reasonable inferences in favor of plaintiff, the timing of plaintiff's termination, in conjunction with his other allegations, plausibly suggests that plaintiff was terminated because he engaged in protected activity.

There was an "unusually suggestive temporal proximity" between plaintiff's Supervisor receiving his counsel's letter and plaintiff's termination. <u>See, e.g.</u>, <u>Riseman v. Atlanta Corp.</u>, 39 Fed.Appx. 761, 763 (3d Cir. 2002). Plaintiff's Supervisor received the letter on July 15, 2009, and plaintiff was terminated one day later on July 16, 2009.

Furthermore, based upon the allegations contained in Plaintiff's Amended Complaint, plaintiff's Supervisor demonstrated a "pattern of antagonism" toward plaintiff. Immediately after plaintiff returned to work from his knee surgery, plaintiff's Supervisor demoted him from his position of Maintenance Director to Personal Care Assistant, required

that he work the overnight shift, and four weeks later reduced his hourly pay.  Plaintiff's Supervisor also incessantly harassed him for several months, up until his termination.[28]

The facts plaintiff alleges, "gleaned from the record as a whole", are sufficient for a trier of fact to plausibly infer a causal link between plaintiff's letter addressing his concerns about age discrimination and plaintiff's termination soon thereafter. Griesbaum, 259 Fed.Appx. at 467.

Plaintiff was 65 years old at the time of his termination.  Through 2008, plaintiff's performance evaluations were excellent.  In the letter his Supervisor received from plaintiff's counsel was an explicit concern over age discrimination.  Receiving this letter, in addition to plaintiff calling off work the evening of July 15, 2009, caused plaintiff's Supervisor to fire him.[29]

Accordingly, I conclude that plaintiff has set forth the elements of a claim of retaliation pursuant to both the ADEA and the PHRA.  Thus, I deny defendant's Partial Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint Against Defendant Whitehall Manor, Inc.

---

[28]     Plaintiff's Amended Complaint at ¶¶  1, 16 and 17.

[29]     Plaintiff's Amended Complaint at ¶¶ 15, 20 and 21 and Exhibits 2-4.

<u>Conclusion</u>

For all of the foregoing reasons, the Partial Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint Against Defendant Whitehall Manor, Inc. is denied.